966 P.2d 1082

**Timothy L. WHITING, Petitioner–Appellant,**

v.

**STATE of Hawai'i, Respondent–Appellee**

No. 20208.

Supreme Court of Hawai'i.

July 9, 1998.

As Amended July 22, 1998.

Stephen M. Shaw, Honolulu, for petitioner-appellant on the writ.

Before MOON, C.J., and KLEIN and RAMIL, JJ., Circuit Judge Town, in place of LEVINSON, J., Recused, and Circuit Judge WATANABE, in place of NAKAYAMA, J., Recused.

Opinion of the Court by KLEIN, J.

We granted Petitioner–Appellant–Defendant Timothy Lewis Whiting's petition for a writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *State v. Whiting*, No. 20208 (App. Nov. 26, 1997). In *Whiting*, the ICA affirmed the circuit court's October 11, 1996 findings of fact, conclusions of law, and order denying Whiting's motion to dismiss based on an alleged violation of the double jeopardy clause of the United States and Hawai'i constitutions. *Id.* slip op. at 12. The issue presented was whether double jeopardy principles precluded a second trial for the offense of murder in the second degree following the reversal of Whiting's conviction of manslaughter due to extreme mental or emotional disturbance ("EMED manslaughter" or "manslaughter due to EMED") pursuant to Hawai'i Revised Statutes (HRS) § 707–702(2) (1993). The ICA held that the State was not prohibited from reprosecuting Whiting for EMED manslaughter. *Id.* slip op. at 11. A retrial for EMED manslaughter requires the State to reprosecute Whiting for murder in the second degree. Thus, the ICA concluded that Whiting can be retried for second degree murder, but if on retrial Whiting is found guilty, Whiting's conviction shall be limited to EMED manslaughter. *Id.* slip op. at 12.

For the reasons discussed below, we affirm the ICA's decision denying Whiting's motion to dismiss. However, because we disagree with the ICA's reasoning and conclusion, we vacate the ICA's opinion and order it depublished. We further remand the case for retrial for the offense of reckless manslaughter consistent with this opinion. .

## I. BACKGROUND

On December 3, 1992, Whiting was indicted for allegedly causing his wife's death, in

violation of HRS § 707–701.5(1). The jury convicted Whiting of manslaughter due to EMED pursuant to HRS § 707–702(2). On appeal from the jury's verdict, the ICA vacated Whiting's conviction and remanded the case for a new trial because of trial error due to the circuit court's failure to voir dire jurors about potentially prejudicial pretrial publicity.

Upon remand, Whiting filed a motion to dismiss based on an alleged violation of the double jeopardy clause of the United States and Hawai‘i constitutions. The circuit court denied the motion, and Whiting filed an appeal on March 27, 1996.

This court dismissed Whiting's appeal on the basis that we lacked appellate jurisdiction. We held that Whiting's appeal did "not fall within the collateral order exception to the final judgment rule because the order summarily denied the motion without fully deciding the double jeopardy question at issue."

On September 30, 1996, Whiting filed a second motion to dismiss renewing his allegation that reprosecution violated the double jeopardy clause of the United States and Hawai‘i constitutions. The circuit court, in denying Whiting's motion, concluded:

1. The guilty verdict for Manslaughter due to extreme mental or emotional disturbance constitutes an acquittal of the offense of Murder in the Second Degree.

2. Defendant cannot be retried for the offense of Murder in the Second Degree.

3. Contrary to Defendant's argument, constitutional protections against double jeopardy do not preclude the retrial of Defendant for the offense of Manslaughter due to extreme mental or emotional disturbance or the offense of reckless Manslaughter.

Whiting appealed the circuit court's denial of his second motion to dismiss arguing that: (1) his conviction of EMED manslaughter is equivalent to an acquittal of second degree murder; (2) EMED manslaughter is a lesser included offense of murder in the second degree and his conviction of EMED manslaughter is deemed an acquittal of the greater charge; and (3) EMED manslaughter is not a chargeable offense.

On November 26, 1997, in a published opinion, the ICA affirmed the circuit court's denial of Whiting's motion to dismiss concluding that the double jeopardy clause did not prevent the State from retrying Whiting for EMED manslaughter. *Whiting,* slip op. at 12. The ICA also explained that, "the State cannot charge [EMED] Manslaughter as an offense because [EMED] Manslaughter is a combination of the State's offense [of murder in the first or second degrees] and Whiting's defense of [extreme mental or emotional disturbance]." *Id.* slip op. at 11–12. According to the ICA, "[t]he only way the State can seek and obtain a conviction of [EMED] Manslaughter is by way of a charge of Murder Second." *Id.* Thus, the ICA vacated conclusions of law nos. 2 and 3 and remanded the case for retrial concluding that, "the State is authorized to again prosecute Whiting for Murder Second but that, if Whiting is found guilty of Murder Second, the judgment shall convict him of [EMED] Manslaughter." *Id.* Whiting filed a timely petition for writ of certiorari, which we granted on December 17, 1997.

## II. *STANDARD OF REVIEW*

The issue whether the court should have granted Whiting's motion to dismiss based on the ground of double jeopardy is a question of constitutional law that we review under the right/wrong standard. *State v. Quitog,* 85 Hawai‘i 128, 139, 938 P.2d 559, 570 (1997); *State v. Toyomura,* 80 Hawai‘i 8, 15, 904 P.2d 893, 900 (1995) (citing *State v. Higa,* 79 Hawai‘i 1, 3, 897 P.2d 928, 930 (1995)).

## III. *DISCUSSION*

### A. *Double Jeopardy Principles*

The double jeopardy clause of the fifth amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" Similarly, article I, section 10 of the Hawai‘i Constitution provides that "nor shall any person be subject to the same offense be twice put in jeopardy[.]"

This court has acknowledged that the underlying purpose of the double jeopardy clause is that

the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Quitog,* 85 Hawai'i at 140, 938 P.2d at 571 (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). "We have also recognized that there are three separate and distinct aspects to the protections offered by the double jeopardy clause. 'Double jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.'" *Id.* at 141, 938 P.2d at 572 (quoting *Higa,* 79 Hawai'i at 5, 897 P.2d at 932 and citing *State v. Lessary,* 75 Haw. 446, 454, 865 P.2d 150, 154, (1994), and *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)).

■ These protections, however, are not without limitation. The double jeopardy clause does not preclude retrial where a defendant was not acquitted of the charged offense or his conviction was set aside because of trial error. *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *State v. Wallace,* 80 Hawai'i 382, 413–14, 910 P.2d 695, 726–27 (1996). In *Whiting,* the ICA identified this case as involving the double jeopardy safeguard against a second prosecution for the same offense after a conviction.[1] *Whiting,* slip op. at 7. As such, the ICA concluded that because "Whiting's [EMED] Manslaughter con-

viction was vacated for trial error and our review of the trial record reveals sufficient evidence to support [his] conviction,[2] reprosecution is constitutionally permissible under both the United States and the Hawai'i Constitutions." *Id.* slip op. at 11. The precise issue that necessitated our grant of certiorari is to determine the "offense" for which the prosecution may retry Whiting.

B. *Principles of Double Jeopardy Prohibit the Prosecution from Reprosecuting Whiting for Second Degree Murder, But Do Not Preclude a Second Trial for the Included Offense of Reckless Manslaughter.*

The offense of "murder in the second degree" with which Whiting was charged is defined by HRS § 707–701.5(1) as "intentionally or knowingly caus[ing] the death of another person." The Hawai'i Penal Code also defines the elements of an "offense"

as such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

HRS § 702–205. Therefore, in order to establish Whiting's guilt, the prosecution was required to prove beyond a reasonable doubt three material elements of the offense of murder in the second degree. These three elements were: (1) that Whiting caused his wife's death (i.e. relevant conduct); (2) that he did so intentionally or knowingly, and (3) that he did so absent any statutorily defined defenses or justification for his action.

At trial, evidence suggested that at the time of his wife's death, Whiting was under

---

1. *See infra* Part III. B. at 10 (recognizing that this case falls within the double jeopardy protection against a second prosecution after an acquittal).

2. In *Whiting,* the ICA considered as open the issue of whether "to follow a rule whereby sufficiency of the evidence is reviewed based only on the evidence that was properly admitted at trial."

*Whiting,* slip op. at 9–10 (quoting *State v. Malufau,* 80 Hawai'i 126, 132, 906 P.2d 612, 619 (1995)). However, we resolved this issue in *Wallace,* ruling that the material elements of the charged offense or offenses must be supported by "substantial *and admissible* evidence." 80 Hawai'i at 412, 910 P.2d at 726 (emphasis in original).

the influence of extreme mental or emotional disturbance. Thus, Whiting requested, and the court granted, an instruction for manslaughter due to EMED pursuant to HRS § 707–702(a).

■ The jury convicted Whiting of manslaughter due to EMED in violation of HRS § 707–702(2). The resulting effect of the jury's verdict established: (1) that the jury concluded beyond a reasonable doubt that Whiting intentionally or knowingly caused his wife's death; (2) that the prosecution failed to negative Whiting's EMED defense; and (3) that the prosecution failed to prove all the material elements of the offense of murder in the second degree. See HRS § 702–205(3)(b). As a consequence, Whiting was absolved from penal liability for murder but, by operation of law, he was found to be criminally responsible for manslaughter. In other words, Whiting's successful use of the EMED defense entitled him to an acquittal of the charge of second degree murder, but made him criminally culpable for manslaughter.

The constitutional protection against double jeopardy unequivocally "protects against a second prosecution for the same offense after an acquittal." State v. Dow, 72 Haw. 56, 57, 806 P.2d 402, 404 (1991) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Contrary to the ICA's conclusion that the reversal of Whiting's conviction of manslaughter due to EMED implicates that aspect of the protection against double jeopardy described as reprosecution after conviction, we conclude that it is the prong that prohibits reprosecution after acquittal that is more pertinent to this case. Consequently, having determined that a conviction of manslaughter due to EMED is deemed an acquittal of murder, we hold that double jeopardy bars Whiting's reprosecution for second degree murder.

Despite this bar to retrial, the ICA maintained that "the State can seek and obtain a conviction of [EMED] Manslaughter ... by way of a charge of Murder Second but that, if Whiting is found guilty of Murder Second, the judgment shall convict him of [EMED] Manslaughter." Whiting, slip op. at 12. This approach, however, wholly misunderstands the nature and purpose of HRS § 707–702(2).

■ HRS § 707–702(2) expresses the concept that

[i]n a prosecution for murder in the first and second degrees it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of another person, under the extreme mental or emotional disturbance for which there is a reasonable explanation.

This concept is commonly referred to as "EMED manslaughter." "EMED manslaughter" is a colloquialism that does not appear in the HPC and is misleading because it tends to erroneously suggest that "EMED manslaughter" represents a separate offense.

On the contrary, the plain language of the statute and Hawai'i case law clearly provide that, " ... HRS § 707–702(2) does not constitute an criminal 'offense' as such but is a 'mitigating defense' that serves to reduce murder to manslaughter." State v. Holbron, 80 Hawai'i 27, 43, 904 P.2d 912, 928 (1995); see also State v. Pinero, 70 Haw. 509, 523–24, 778 P.2d 704, 714 (1989) (commenting on HRS § 707–702(2)); State v. Matias, 74 Haw. 197, 204, 840 P.2d 374, 379 (1992) (describing the manslaughter mitigation defense); State v. Russo, 69 Haw. 72, 734 P.2d 156 (1987) (discussing the origins of HRS § 707–702(2)).

■ Similarly, in Whiting, the ICA acknowledged that HRS § 707–702(2) is not an offense but rather a "combination of the State's offense [of murder in the second degree] and Whiting's [EMED] defense." Whiting, slip op. at 11–12. Hence, pursuant to HRS § 707–702(2), manslaughter due to EMED is neither a chargeable offense nor a lesser included offense.[3] Rather, HRS

---

3. An offense is included in another when:
   (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
   (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

§ 707–702(2) provides a special *defense* idiosyncratic to a charge of murder that mitigates a defendant's culpability for murder by diminishing his penal liability for the offense. Moreover, inasmuch as manslaughter due to EMED is a *defense* not an offense, "an alleged violation of ... [HRS § 707–702(2)] obviously could not be charged as ... manslaughter in the indictment or complaint." *Holbron,* 80 Hawai'i at 43, 904 P.2d at 928.

■ In the instant case, Whiting was charged with murder in the second degree and convicted of manslaughter due to EMED. On appeal, the ICA reversed his conviction due to trial error. It is well-settled that double jeopardy principles do not preclude a retrial for the same offense where a defendant's conviction was set aside due to trial error. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Tateo,* 377 U.S. at 465, 84 S.Ct. 1587; *Wallace,* 80 Hawai'i at 413–14, 910 P.2d at 726–27. In this case, because a retrial for manslaughter due to EMED can only be accomplished by means of Whiting's reprosecution for the offense of second degree murder, Whiting's constitutional protection "against a second prosecution for the same offense after acquittal" would be violated if another murder prosecution ensued. *Dow,* 72 Haw. at 57, 806 P.2d at 404.

The principles of double jeopardy protect against more than repeated attempts by the prosecution to achieve conviction and punishment of a defendant for the same offense. Double jeopardy also protects a defendant from the "hazards of trial." *See Quitog,* 85 Hawai'i at 140, 938 P.2d at 571 (quoting *Green,* 355 U.S. at 187, 78 S.Ct. 221). This includes subjecting a defendant "to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." *Id.* Although the ICA's remedy relieves Whiting of the "anxiety" or "insecurity" of being *convicted* of second degree murder, he is still exposed to the rigors and embarrassment of a murder trial.

When a constitutional right such as the protection against double jeopardy is plainly implicated, its assertion cannot be rejected by judicial gerrymandering of the penal process. In other words, either the protection afforded by the constitution is applicable or it is not based upon the merits and posture of the case. When Whiting articulated his protection against double jeopardy argument, he was facing a retrial for murder after having been acquitted of the same offense. A reprosecution under these circumstances would obviously violate Whiting's constitutional protection against double jeopardy but for judicial reconstruction of the penal process. It is this reconstruction that is anathema to the constitutional principles embodied in the fifth amendment to the United States Constitution and article I, section 10 of the Hawai'i State Constitution. Accordingly, based on the foregoing discussion, we conclude that the ICA's artful solution to Whiting's retrial is constitutionally impermissible.

■ This court has recently ruled that "remanding [a] case for retrial on *lesser included offenses* ... offends neither the fifth amendment to the United States Constitution nor article I, section 10 of the Hawai'i Constitution." *Quitog,* 85 Hawai'i at 149, 938 P.2d at 580 (footnote omitted and emphasis in original). "[Reckless] [m]anslaughter as defined by section 707–702(1)(a) unquestionably is a lesser included offense of murder since one cannot commit murder without also having committed manslaughter." *Holbron,* 80 Hawai'i at 42, 904 P.2d at 927. Therefore, on remand, we hold that the prosecution is not barred from reprosecuting Whiting for the offense of reckless manslaughter.

In our view, reprosecution for the offense of reckless manslaughter, following a reversal of a conviction for manslaughter due to EMED based on trial error, is the functional equivalent of a retrial for manslaughter due to EMED. First, a defendant convicted of manslaughter due to EMED, but reprosecuted for reckless manslaughter is essentially being retried for the same offense—man-

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating

lesser degree of culpability suffices to establish its commission.
HRS § 701–109(4).

slaughter. In addition, reckless manslaughter and manslaughter due to EMED are both class B felonies, *see* HRS § 707–702(3) ("Manslaughter is a class B felony"), subject to a 10 year maximum sentence of imprisonment.[4] HRS § 706–660(1).

Second, the standard jury instruction for manslaughter due to EMED, correctly instructs the jury that it must first find that the defendant intentionally or knowingly caused the death of another person before considering EMED as a defense. *See* Hawai'i Standard Jury Instructions, Rule 5.02 (1991).[5] Therefore, by definition, when a jury is instructed to consider EMED as a defense all the elements necessary to support a reckless manslaughter conviction have been proven. *See also* HRS § 702–208 ("[w]hen the law provides that recklessness is sufficient to establish an element of an offense, that element also is established if, with respect thereto, a person acts intentionally or knowingly.").

Finally, the commentary to HRS § 707–702 acknowledges that,

> [i]n the case of an intentional or knowing killing, where mitigating circumstances are present, the prosecutor may, but need not, bring a prosecution for murder. The prosecutor may, if the prosecutor chooses, bring a prosecution for manslaughter. *Since recklessness will be satisfied by proof that the defendant acted intentionally or knowingly, a charge of manslaughter could be employed where a prosecutor, in the prosecutor's discretion, did not wish to push for a murder conviction.*

(Emphasis added.) Inasmuch as the penal code recognizes the discretion the prosecutor has in either prosecuting a defendant for murder or reckless manslaughter where elements of EMED are factually apparent, it is clear that Whiting's reprosecution for reckless manslaughter neither offends the code nor Whiting's constitutional right against double jeopardy.[6]

## IV. CONCLUSION

For the foregoing reasons, we affirm the ICA's decision denying Whiting's motion to dismiss on the ground of double jeopardy; vacate the ICA's opinion and order it depublished; and remand the case for a new trial on the offense of reckless manslaughter consistent with this opinion.

4. We recognize that manslaughter has been reclassified by the legislature to a class A felony, *see* HRS § 707-702(3) (Supp. 1997), carrying a mandatory 20 year sentence of imprisonment, *see* HRS §707-659. As applied to Whiting, however, the amendment is inapplicable because the change occurred after his 1993 conviction.

5. Hawai'i Jury Instructions, Rule 5.02 reads in pertinent part:
   If and only if you find, beyond a reasonable doubt, that defendant intentionally or knowingly caused the death of [decedent] [and that he/she was not justified in using deadly force], you must then determine whether, at that time, the defendant was under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances of which the defendant was aware or as the defendant believed them to be.

   The prosecution must prove beyond a reasonable doubt that the defendant was not, at the time that he caused the death of [decedent], under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. If the prosecution has done so, then you must return a verdict of guilty of Murder in the Second Degree. If the prosecution has not done so, then you must return a verdict of guilty of Manslaughter based upon extreme mental or emotional disturbance.

6. As a final comment, the theoretical difficulty our courts have had with this case can be attributed to the fact that HRS § 707-702(2) defines EMED as a defense to murder rather than as a criminal *offense*. These problems would be eliminated if EMED were expressly defined as a criminal offense, lesser included in the offense of murder. Such a change would require statutory amendments by the legislature.